UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CHARLIE LEWIS THORNTON JR., | 4:25-CV-04216-RAL |
| Plaintiff, | |
| vs. | ORDER DISMISSING CASE ON 1915 SCREENING |
| TZADIK PROPERTIES, LLC, BREIT & BOOMSMA, P.C., | |
| Defendants. | |

Plaintiff, Charlie Lewis Thornton, Jr., filed a pro se lawsuit alleging violations of various federal laws and state-law claims related to mail tampering. Doc. 1. Thornton also moves for leave to proceed in forma pauperis, Doc. 2, and for appointment of counsel, Doc. 3.

I.    **Motion for Leave to Proceed In Forma Pauperis**

A federal court may authorize the start of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. Williams v. McKenzie, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir. 1983). After review of Thornton's financial

affidavits, the Court finds he has insufficient funds to pay the filing fee. Thus, Thornton's motion for leave to proceed in forma pauperis, Doc. 2, is granted.

## II.    1915 Screening

### A.    Factual Background

Tzadik Properties, LLC, rented Thornton and his family an apartment located at 1504 S. Rock Creek Drive, Apt. 210, Sioux Falls, South Dakota. Doc. 1-1 at 11. Thornton resided there with his family at least as early as June 2025. Id. at 11–12 (listing rent owed for June 2025). On October 2, 2025, an attorney for Thornton's landlord, Tzadik Properties, LLC, initiated eviction proceedings in state court in Minnehaha County. Id. The complaint alleged that Thornton and other occupants had breached the lease agreement, including failing to pay rent. Id. at 11. The complaint requested restitution and possession of the apartment, back rent and penalties in the amount of $3,850.66, costs and attorney fees, and any other relief the court deemed proper. Id. at 12. On October 10, 2025, the attorneys for Tzadik Properties sent a letter enclosing the summons and complaint to Thornton. Id. at 8, 10–13. The Magistrate Judge later found that the summons and complaint had been served on Thornton and other occupants. Id. at 13. Thornton and the other occupants of the apartment were not represented by an attorney during the eviction proceedings. Id. On November 3, 2025, the state court ordered that Thornton and the other occupants owed Tzadik Properties a total of $3,923.16, which included the pro-rated rent for November 2025. Id. at 13–15, 18–19.[1]

---

[1] Separately, Tzadik Properties appears to have been undergoing bankruptcy proceedings in the Southern District of Florida at the time of the eviction proceedings. Doc. 1-1 at 5–7. This Court does not have further information about these bankruptcy proceedings or how they relate to Thornton's mail tampering allegations.

On November 4, 2025, someone, possibly Thornton, filed a letter in a Minnehaha County court case[2] from Anthony Goldammer, Supervisor Customer Service at the United States Postal Service (USPS), to "Customer" regarding a complaint about the mail that was addressed to 1504 Rock Creek, Apartment 210. Id. at 16. This address appears to refer to the same apartment at issue in the eviction case and where Thornton lived at the time. Id. at 11. The letter explained that beginning in late May or early June, the USPS had started holding mail at the downtown post office and resumed delivery to the new mailboxes near 1600 S Rock Creek on October 20, 2025. Id. at 16. Goldammer's investigation into the customer's inquiry "revealed [his] mail was returned to sender because mailbox was not secure and mail being held at the post office was not picked up." Id. The letter from USPS explained, "When there is uncertainty about the correct address, we believe it is better to return the mail to its sender, rather than risk delivery to the wrong person." Id. The letter concluded with information about further online resources. Id.

Thornton alleges that the Defendants, Tzadik Properties, and its attorneys, Breit & Boomsma, P.C., tampered with his mail during the eviction proceedings and hid the mailbox, thereby placing Thornton in default of eviction and causing pain and damage for Thornton's family. Doc. 1 at 3. Thornton argues that the eviction was illegal as he was never properly served because the Defendants hid his mailbox. Id. at 1. Thornton also asserts that the Defendants' hiding of his mailbox caused his electricity to be cut off. Id. Thornton alleges that at first, the Defendants refused to fix the mailbox, and after Thornton complained to USPS, the Defendants hid his mail

---

[2] The case number handwritten on the top of the letter, "49 CIV 24-3289" is different from the case number assigned to the state eviction court proceeding, "CIV 25-4768." Compare Doc. 1-1 at 13, with Doc. 1-1 at 16. The letter from the United States Postal Service is stamped as having been filed with the Minnehaha County Clerk of Court, but the person who filed the letter with the Minnehaha County Clerk of Court is not clear from the attached exhibit. See Doc. 1-1 at 16.

and refused to tell Thornton where it was, which cost Thornton $8,000.00 and caused emotional damage. Id.

Thornton alleges claims under the 18 U.S.C. §§ 1700, 1702, 1703, and 1710 (regarding crimes related to the postal service), as well as "SDCL[3]—Tampering with mail." Id. Thornton seeks three separate amounts, twenty million dollars, eight thousand dollars, and eighty thousand dollars, for emotional damages as well as for his and his children's electrocution when the property did not pass city inspection. Id. at 2, 4. Thornton further requests seizure of the property at 1504 S Rock Creek Drive. Id. at 2.

### B.     Legal Standard

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under § 1915(a), the court must then determine whether the complaint should be dismissed under § 1915(e)(2)(B). Martin-Trigona v. Stewart, 691 F.2d 856, 857 (8th Cir. 1982) (per curiam); see also Key v. Does, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). The court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[] to state a claim on which relief may be granted; or (iii) seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of

---

[3] "SDCL" is a reference to the South Dakota Codified Laws.

4

Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A district court has the duty to examine a pro se complaint "to determine if the allegations provide for relief on any possible theory." Williams v. Willits, 853 F.2d 586, 588 (8th Cir. 1988) (citing Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974)). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)).

Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted) (quoting Twombly, 550 U.S. at 556). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (alteration in original) (citation and internal marks omitted).

5

### C.     Analysis

#### 1.     Claims Under 18 U.S.C. §§ 1700, 1702, 1703, and 1710

Thornton seeks relief under 18 U.S.C. §§ 1700, 1702, 1703, and 1710. Doc. 1 at 1. Under 18 U.S.C. § 1700, it is a crime for anyone to "having taken charge of any mail, voluntarily quits or deserts the same before he has delivered it into the post office at the termination of the route, or to some known mail carrier, messenger, agent, or other employee in the Postal Service authorized to receive the same[.]" 18 U.S.C. § 1702, the second statute that Thornton relies upon, penalizes

> [w]hoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same[.]

18 U.S.C. § 1703 penalizes "[w]hoever, without authority, opens, or destroys any mail or package of newspapers not directed to him," and criminalizes certain misconduct by USPS officers and employees. Finally, under 18 U.S.C. § 1710, it is crime for anyone to take or steal "any newspaper or package of newspapers from any post office or from any person having custody thereof[.]"

Thornton's claims under these statutes are "non-starters" because they are "criminal-law provisions that do not supply a right of action to private litigants[.]" Bethune v. Facebook Inc., No. 21-CV-2118, 2021 WL 5182246, at *1 (D. Minn. Oct. 15, 2021), aff'd, 2022 WL 1322731 (8th Cir. Jan. 14, 2022). See also Sproaps v. Doorways, No. 4:23-CV-01341, 2024 WL 864153, at *2 (E.D. Mo. Feb. 29, 2024) ("The mail-related statutes found in Chapter 83 of Title 18 of the United States Code are criminal statutes that confer no private right of action on Plaintiff."); Yablonsky v. Cal. Dep't of Corr. & Rehab., No. 18-CV-1122, 2019 WL 3974137, at *3 (S.D. Cal. Aug. 21, 2019) ("Defendants rightly object that those criminal statutes [18 U.S.C. §§ 1700–10] do not give rise to civil liability."), report and recommendation adopted, 2019 WL 4303273 (S.D. Cal.

6

Sep. 11, 2019); <u>Diaz v. City of San Fernando</u>, No. CV 13-6047, 2015 WL 13237402, at *5 (C.D. Cal. June 18, 2015) ("The federal criminal [mail-fraud and tampering] statutes [18 U.S.C. §§ 1700–08] on which plaintiff relies do not provide a basis for a civil liability or expressly create a private right of action . . . ."), <u>report and recommendation adopted</u>, 2015 WL 13238926 (C.D. Cal. Aug. 28, 2015); <u>Bryant v. Johnson</u>, No. 2:20-CV-03459, 2021 WL 8844649, at *14 n.10 (C.D. Cal. Nov. 16, 2021). Therefore, Thornton's claims under 18 U.S.C. §§ 1700, 1702, 1703, and 1710 are dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

**2.    Claims Under "Tampering with Mail"**

Thornton also seeks relief under "SDCL—Tampering with mail." Doc. 1 at 1. SDCL is a reference to the South Dakota Codified Laws, but there appears to be no provision of the South Dakota Codified Laws that creates a cause of action for mail tampering specifically. And, if there were, Thornton possibly would have a claim in state court for such a state-law claim. There is no complete diversity of citizenship here given that Thornton is a South Dakota resident and Breit & Boomsma, P.C. is a South Dakota professional corporation. Therefore, the claim Thornton asserts under the South Dakota Codified Laws for mail tampering is dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

**III.    Motion to Appoint Counsel**

Thornton has also filed a motion to appoint counsel. Doc. 3. Because Thornton's claims are all dismissed, the motion to appoint counsel, Doc. 3, is denied as moot.

**IV.    Conclusion**

Accordingly, it is

7

8

ORDERED that Thornton's motion for leave to proceed in forma pauperis, Doc. 2, is granted. It is further

ORDERED that Thornton's claims arising under 18 U.S.C. §§ 1700, 1702, 1703, and 1710 are dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii). It is further

ORDERED that Thornton's state-law claim for "mail tampering" is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii). It is finally

ORDERED that Thornton's motion to appoint counsel, Doc. 3, is denied as moot.

DATED this 11th day of May, 2026.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE